IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. CIV-05-1235-C |
| BILL LEMONS, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The parties have filed cross-motions for summary judgment on the issue of whether Defendant Bill Lemons is an "insured" under the uninsured/underinsured motorist ("UM") coverage provision in his employer's policy, issued by Plaintiff Transcontinental Insurance Company. Responses have been filed. For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

BACKGROUND

Mr. Lemons suffered serious injuries on January 12, 2004, when he was run over by a trailer being pulled by a truck driven by Jeff Rosenfelt. At the time, Mr. Lemons and Mr. Rosenfelt were employees of Silver Star Construction, Inc., and had been working on a road construction project in Moore, Oklahoma. Before leaving that project site, they loaded a "Bobcat" onto the trailer attached to a one-ton flatbed pickup truck. At approximately 10:45 a.m., the two men got into the pickup, drove approximately 100 or 150 feet, and stopped to allow Mr. Lemons to retrieve his lunch box from the seat of a City of Moore dump truck that Mr. Lemons had driven and parked nearby earlier that morning. Mr. Lemons and Mr.

Rosenfelt intended to pick up Mr. Lemons' lunch box and drive somewhere else to eat lunch before going to another construction site.

The dump truck was parked off the roadway on the east side of Pole Road. Because the west (southbound) lane of Pole Road was closed due to the construction, north and southbound traffic were using the east (northbound) lane. Mr. Rosenfelt, who was driving the pickup, drove north on Pole Road and stopped in the east (northbound) lane of Pole Road. When Mr. Lemons left the pickup, the cab was in front of the front-end of the dump truck with the passenger side approximately four to six feet away from the dump truck. When Mr. Rosenfelt stopped the pickup, it blocked the east (northbound) lane so that no other vehicles could get by. Mr. Rosenfelt remained in the pickup and left the engine running.

When the pickup stopped, Mr. Lemons got out. He left the passenger door open, walked to the dump truck, opened the door, stepped up, reached in through the door, and picked up his lunch off the seat. Mr. Lemons then stepped down and away from the dump truck, closed its door, and possibly began to turn around to re-enter the pickup.[1]

---

[1] Mr. Lemons was asked repeated questions about what he was doing immediately before and at the time he was hit by the trailer. In one place he responded that when he got out of the dump truck, the pickup truck was moving: "[e]vidently it was moving. But everything happened so quick at the time. About the only thing I know, as soon as the, about when my feet hit that ground, is when the trailer's wheels caught my legs." (Pl.'s Ex. 3 at 11.) In the same discussion, Mr. Lemons explained that he had closed the dump truck door and started to walk back to the pickup (id. at 10), he had "backed up away" (id. at 13), and that the trailer was "right there" when he turned around (id.).

However, at the same time Mr. Lemons had been retrieving his lunch, Mr. Rosenfelt noticed, in his rearview mirror, a northbound vehicle approaching. Mr. Rosenfelt drove forward approximately six to eight feet to clear the lane and allow the vehicle to pass. As the pickup was moving forward, Mr. Lemons was turning to get back in. He was struck on his right ankle, knocked down, and run over by the front wheels of the trailer. Roughly six to ten seconds elapsed from the time Mr. Lemons got out of the pickup until he was run over.

Transcontinental denied Mr. Lemons' claim and filed this action for declaratory judgment, seeking a determination from this Court that Mr. Lemons was not an "insured."

## STANDARD

Summary judgment is proper only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999). At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).

When the nonmovant will bear the burden of proof at trial, summary judgment is avoided only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential and contested element of the case. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).

With respect to cross-motions for summary judgment, the Court must evaluate each motion on its own merits, construing all inferences in favor of the party against whom the motion under consideration is made. See Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000). Although summary judgment is inappropriate if disputes remain as to material facts, the Court is permitted "to assume that no evidence needs to be considered other than that filed by the parties." Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (citations omitted).

## DISCUSSION

The parties do not dispute that: the pickup was an insured vehicle under a Business Auto Insurance Policy (the Policy), the Policy was in force and effect on January 12, 2004, or the Policy provided UM coverage of one million dollars on the pickup. The pertinent part of the Policy states:

> We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

(Pl.'s Ex. 5, subsection A.) There is no dispute that no other insurance applies or that Mr. Lemons sustained serious "bodily injury" in an "accident." The sole, and hotly contested issue, is whether Mr. Lemons is an "insured."

Under the Policy, an "insured" is "[a]nyone 'occupying' a covered auto." (Id., subsection B.) "'Occupying' means in, upon, getting in, on, or off." (Id., subsection F.) Mr. Lemons contends that he was occupying the pickup when he was injured because he was "getting in" or, alternatively, "upon" the truck (or that the trailer was "upon" him) at the time.

Under Oklahoma law, "whether [a UM] policy definition of 'occupying' is satisfied should be left to a case-by-case analysis, depending on the circumstances of the accident, the use of the vehicle, the relevant terms of the coverage at issue, and any underlying public policy considerations." Wickham v. Equity Fire & Cas. Co., 1994 OK CIV APP 148, ¶ 10, 889 P.2d 1258, 1261.[2] "[W]e decline to adopt any bright-line test to determine whether someone occupied a vehicle for purposes of UM coverage." Id. The Wickham court specifically declined to adopt any specific test that might be used in other jurisdictions, including a "physical contact" test, "vehicle orientation" test, or "reasonably close geographic proximity" test. Instead, the court determined that a case-by-case approach, with its various considerations identified above, is the proper method for construing the term "occupying" in UM insurance contracts.

---

[2] The Wickham court explained that "occupant" was a defined term but the words used in the definition were "at once so common yet [did] not posses[] a single meaning." Id. at ¶ 5, 1260.

There, Wickham was hit and seriously injured by a passing car after stopping to help another motorist whose car had lost a wheel. The motorist's uninsured motorist policy covered anyone "occupying" the car, occupying being defined as "'in, on, getting in or on, or getting off or out of.'" Id. ¶ at 3, 1260. However, the insurance company denied Wickham's claim because he had not physically occupied the motorist's car, nor did he intend to, and, therefore, did not satisfy the definition of "occupying." Id. at 1261. The court rejected that interpretation as too narrow and concluded that, as defined in the policy, "occupying" was a broad enough term to include "a person such as Wickham who had looked through the trunk for tools, who was performing repairs on the vehicle, and who was situated next to the vehicle, tightening a lug nut on the wheel." Id. at ¶ 11, 1261.

Here, the relevant considerations identified in Wickham show that Mr. Lemons was "occupying" the pickup truck, in the sense of "getting in," when he was injured. Although Mr. Lemons was outside the pickup truck and was not doing anything *to* the pickup at the time, he had only temporarily left it to retrieve his lunch. The pickup was stopped, engine running, a few feet away from the dump truck. Mr. Lemons left the pickup's passenger door open and was attempting to re-enter the pickup seconds later when he was injured. Mr. Rosenfelt and Mr. Lemons testified that it was their intention to pick up Mr. Lemons's lunch box and drive to a different location to eat. Thus, Mr. Lemons had a much stronger connection to the pickup than Wickham did to the motorist's car he was helping to repair. Mr. Lemons had been a passenger in the pickup shortly before the accident and intended to occupy that position again after collecting his lunch box.

Transcontinental argues that if Mr. Lemons had his back to the pickup when he was hit, as is a possible interpretation of one response, he could not have been "getting in" the pickup. The Court does not agree. Whether or not Mr. Lemons had started his turn and regardless of what point he was in that turn, it is clear that he had stepped down and away from the dump truck enough to close its door. By all accounts, Mr. Lemons was attempting and intending to return to the pickup he believed to be waiting for him, four to six feet away, when he was knocked down and run over by the trailer. To restrict "getting in" to forward-facing efforts, regardless of the surrounding circumstances, is too narrow a construction and inconsistent with the public policies underlying Oklahoma's uninsured motorist statute. See 36 Okla. Stat. § 3636 (requiring automobile liability polices to provide coverage (unless rejected) "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . ."); see also Kreuser v. Heritage Mut. Ins. Co., 461 N.W.2d 806, 809 (Wis. Ct. App. 1990) (holding that a person preparing to enter an automobile but who was not yet in physical contact was an "occupant"); Allstate Ins. Co. v. Howe, 623 A.2d 1031, 1034 (Conn. App. Ct. 1993) (concluding that a person injured while in the process of getting into a vehicle following a brief interruption in travels related to car's operation was an "occupant").

For these reasons, the Court is satisfied that the circumstances of this case fall under the Policy definition of "occupying." Mr. Lemons was getting in the pickup when he stepped down from the dump truck and moved to re-enter the pickup. Because the Court has determined that Mr. Lemons was occupying the pickup truck at the time of the accident, it

holds that he is an "insured." The use of the vehicle, the relevant terms of the Policy, and underlying policy considerations do not in anyway weaken this conclusion.[3]

Accordingly, Defendant is entitled to judgment on the issue of liability. Defendant's Motion for Partial Summary Judgment (Dkt. No. 28) is GRANTED. Plaintiff's Motion for Summary Judgment (Dkt. No. 29) is DENIED.

IT IS SO ORDERED this 28th day of June, 2006.

ROBIN J. CAUTHRON
United States District Judge

---

[3] It is unnecessary to consider Mr. Lemons' contentions regarding "upon."